<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| **JEROME RANDOLPH,** | : | **CIV. NO. 20-4356 (RMB)** |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| **WARDEN FCI FORT DIX,** | : | |
| | : | |
| Respondent | : | |

**RENÉE MARIE BUMB, UNITED STATES DISTRICT JUDGE**

This matter comes before the Court upon Petitioner Jerome Randolph's petition for writ of habeas corpus under 28 U.S.C. § 2241 (Pet., Docket No. 1), alleging due process violations in connection with a prison disciplinary hearing in the Federal Bureau of Prisons ("BOP"), FCI Fort Dix. Also before the Court is Respondent's answer in opposition to habeas relief (Answer, Docket No. 6), and Petitioner's reply brief. (Reply Brief, Docket No. 7.) For the reasons discussed below, the Court will deny two of Petitioner's grounds for relief, and order supplemental briefing on a third ground for relief.

**I.  BACKGROUND**

    **A.  The Incident Report**

Petitioner, presently incarcerated at the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"), was incarcerated in FCI Fort Dix at the time

of the incident in question. (Declaration of Christina Clark[1] ("Clark Decl."), Attach. 1, Docket No. 6-1 at 5-7.) Officer W. Lebron-Ocasio described the alleged prison rule infraction in Incident Report #3287297 as follows:

> On August 3, 2019 at approximately 6:58 pm I W. Lebron-Ocasio was conducting a shakedown in room 339. I/M Randolph Register No. 69594-066 is the first one I pat down. After I am done he begins to leave the room and asks another Inmate for his book. When I ask I/M Randolph to let me see the book he started to run from me. I ran after Inmate Randolph to the second floor where he ran into the urinal area in bathroom #213. At this moment I/M Randolph was given several direct orders to submit to hand restraints in which he would not comply. Upon responding staff arrival, a search was conducted in the urinal area in bathroom #213 where the Inmate was located. One black LG phone was found in the urinal area.

(Clark Decl., Attach. 6, ¶ 11, Docket No. 6-1 at 15.)

In the incident report, Petitioner was charged with three violations of the disciplinary code: 108 ("Possession, manufacture, introduction, or loss of a hazardous tool"), 115 ("Destroying and/or disposing of any item during a search or attempt to search"), and 307 ("Refusing to obey an order of any staff member"). (*Id.* ¶ 10.) *See* 28 C.F.R. § 541.3 (listing code violations in table). Codes 108 and 115 are "greatest severity level prohibited acts," and Code 307 is a "moderate severity level prohibited act." *Id.*

Petitioner received a copy of Officer Lebron-Ocasio's incident report. (Clark Decl., Attach 3, Part I, ¶ 14, Docket No. 6-1 at 15.) The investigation of the incident

---

[1] Christina Clark is an attorney with the BOP, FCI-Fort Dix, and has access to BOP files maintained in the ordinary course of business. (Clark Decl. ¶1, Docket No. 6-1.)

was conducted the next morning by Lt. A. Gillespie, who notified Petitioner of his rights. (Clark Decl., Attach 3, Part III, ¶ 23, Docket No. 6-1 at 15.)  Petitioner told Lt. Gillespie that he was in the quiet room, not the bathroom, when he was handcuffed. (*Id.* ¶ 24.) Petitioner also said he was not the person who ran from the officer because he was wearing flip flops, and he cannot run in flip flops. (*Id.*)

**B.   UDC Review**

On August 5, 2019, the Unit Discipline Committee ("UDC") reviewed the incident report and investigation. (*Id.*, Part II.) Petitioner told the UDC that "he did not run from the officer" and "never made it to the restroom." (*Id.* ¶ 17.) The UDC referred the matter to the DHO because of the seriousness of the infraction. (*Id.* ¶¶18, 19.) Petitioner acknowledged that he was provided with:  (1) a written notice that the matter would go before a DHO; and (2) a written notice of his rights at a DHO hearing. (Clark Decl., Attach. 4 & 5, Docket Nos. 6-1 at 17-20.)

**C.   DHO Hearing**

On August 15, 2019, DHO Keith Hampton conducted Petitioner's disciplinary hearing. (*Id.*, Attach 6, Docket No. 6-1 at 22-25.) Hampton is a permanent, full-time DHO. (Declaration of Keith Hampton, ¶ 3, Docket No. 6-2.) According to the DHO Hearing Report,  Hampton considered only the code 108 charge. (Clark Decl. Attach. 6, Docket No. 6-1 at 22 (summary of charges)).  Code 108 is defined as follows:

> Possession, manufacture, introduction, or loss of a
> hazardous tool (tools most likely to be used in an escape or

3

>escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device).

28 C.F.R. § 541.3.

At the hearing, Petitioner did not call any witnesses or offer any evidence apart from his statement that "I am not guilty, the cellphone wasn't mine." (Clark Decl., Attach. 6, Part III(b), Docket No. 6-1 at 22.) The DHO considered this statement along with the incident report from Officer Lebron-Ocasio, and the photo of the cellphone that was discovered. (*Id.*, Attach 6, § V, Docket No. 6-1 at 23.) Also in record, but not discussed in the DHO Report, were two memoranda, one from Officer Lebron-Ocasio and the other from Officer J. Sandino, regarding the use-of-force in restraining Petitioner in connection with the incident. (*Id.*, Attach. 6, Docket No. 6-1 at 31, 32.)

### D. The DHO Decision

The DHO found that Petitioner violated code 108 as charged. (*Id.*, § IV, Docket No. 6-1 at 23.) He did not believe Petitioner's denials of guilt were truthful. (*Id.*, § V.) Instead, the DHO credited the incident report by Officer Lebron-Ocasio. (*Id.*) The DHO noted that "possession" under 108 means to "have on one's person or under one's dominion or control." (*Id.*) The DHO concluded that it was not relevant whether the cellphone (1) "belonged" to Petitioner; or (2) was found on his person by BOP staff, because the evidence tended to show that he had dominion over it prior to

4

his apprehension in bathroom 213. (Clark Decl., Attach. 6, § V, Docket No. 6-1 at 23.) Based on his findings, DHO Hampton imposed sanctions of disallowance of 41 days good conduct time, 60 days disciplinary segregation (suspended 180 days with clear conduct), and 365 days loss of visitor privileges. (*Id.*, § VI, Docket No. 6-1 at 24.) The DHO report was completed on August 20, 2019 and delivered to Petitioner on September 5, 2019. (*Id.*, § IX, Docket No. 6-1 at 24.) The DHO report advised Petitioner of his right to appeal the DHO's decision. (*Id.* § VIII.) It is undisputed that Petitioner exhausted his administrative remedies. (Answer, Docket No. 6 at 10.)

## II.  DISCUSSION

### A.  The Parties' Arguments

Petitioner seeks expungement of the DHO's decision based on alleged Due Process violations, including: (1) the DHO, who was a correctional officer at FCI Fort Dix, was biased in favor of other correctional officers; and (2) that the incident report was false and does not support the charge for possession a cell phone, which was found in a common area of a bathroom after Petitioner's pat down revealed he did not have a cell phone. (Pet., Docket No. 1 at 2.) Petitioner asserts that he walked out of the bathroom, and the phone was found in an open area in the bathroom that accommodates more than 20 inmates. (*Id.*) In his administrative remedy appeal, attached to the petition, Petitioner asserts that the cell phone was found in a bathroom stall. (Exhibit, Docket No. 1-1 at 2.)

In opposition to habeas relief, Respondent maintains that the DHO's decision was supported by the incident report. (Answer, Docket No. 6 at 16.) Respondent

5

contends the DHO's finding is strengthened by Petitioner's inconsistent statements, some of which were made after the DHO finding, including: (1) upon Lt. Gillespie's investigation on August 4, 2019, Petitioner said he was not in the bathroom when he was restrained; (2) before the DHO on August 15, 2019, Petitioner appeared to concede that he was in the bathroom, but he denied possessing the cell phone; (3) in his Regional Office Appeal, Petitioner did not argue that he was apprehended in the bathroom; and (4) in his Central Office appeal, Petitioner concedes that he was in the bathroom where the cellphone was found, but he did not rush there, and he walked out. (Answer, Docket No. 6 at 16.) Respondent submitted into the record Petitioner's administrative remedy forms and responses to his grievances, the incident report, Inmate Rights at Discipline Hearing form, Notice of Discipline Hearing Before the DHO form, and the DHO Report. (Clark Decl., Docket Nos. 6-2, 6-3, 6-4, 6-5, 6-6.)

Also in support of Respondent's opposition to the habeas petition, Respondent submitted the Declaration of DHO Keith Hampton, stating that he is a full-time DHO at FCI Fort Dix, and he believes Petitioner may have confused him with Lieutenant Hampton. (Declaration of Keith Hampton, Docket No. 6-2.) Thus, Respondent rejects Petitioner's claim that DHO Hampton was not impartial because he is just another corrections officer. (Answer, Docket No. 6 at 17-18.)

Petitioner filed a reply brief. (Reply Brief, Docket No. 7.) Petitioner concedes that DHO Hampton was a qualified DHO, but he questions how DHO Hampton could be impartial when considering the allegations of his BOP colleagues. (*Id.* at 2.) Petitioner raises a new claim that, according to Respondent's Exhibit 3, only one

6

person served on the UDC Committee, which was supposed to have three members. (Reply Brief, Docket No. 7 at 2-3.) He asserts this was a violation of his right to due process.

Finally, Petitioner raises a new argument about inconsistencies in the officers' statements, which he contends were not provided to him earlier, although they should have been because he would have presented these statements at the hearing to prove his innocence of possessing the cell phone. Lieutenant W. Decker gave a statement that Petitioner threw a book into bathroom #213. (Reply Brief, Docket No. 7 at 3, citing Respondent's Exhibit 6.) Petitioner notes that no book was recovered. (*Id.*) Officer J. Sandino stated that Petitioner was resisting restraint in front of the second floor room #250, which Petitioner states is at the opposite end of the building to bathroom #213. (*Id.*) Further, Officer Lebron-Ocasio gave a statement, in addition to the incident report, which says nothing about a book, only that a cell phone was found upon search of a urinal in bathroom #213. (*Id.* at 4.) Petitioner provided a hand-drawn layout of the bathroom to establish that it is impossible to throw a book into the bathroom and have it land in the urinal, which is around a corner behind a screened partition. (*Id.* at 4; Attach. A, Docket No. 7 at 6.) Petitioner challenges his conviction based on the following assertions:

- At the time of the incident, no staff member requested an ID card from any inmate
- No officer confirmed Petitioner's bunk assignment or confirmed his ID through SENTRY

7

- None of the statements explain how the person who fled from room 339 was later apprehended at the far end of the building on the second floor

- The only evidence by staff against Petitioner is that he was restrained and accused of involvement in the incident

### B. Standard of Law

In *Wolff v. McDonnell*, the Supreme Court described the minimum due process required before an inmate may be sanctioned with loss of good-time credits for violating a prison rule. 418 U.S. 539, 563-71 (1974). The due process protections include (1) written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in defense; (3) opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and reasons for the disciplinary action; and (5) an appearance before an impartial decision-making body. *Wolff*, 418 U.S. at 563–567. The Supreme Court later held that "some evidence" is the standard of review required to affirm an inmate's finding of guilt of a prison rule infraction. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* The standard is met if any evidence in the record could support the conclusion by the tribunal. *Id.* at 455-56.

The BOP regulations for prison disciplinary proceedings exceed the minimum due process provided in Wolff. See 28 C.F.R. §§ 541.1 to 541.8; see Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994) ("While the regulations

substantially track the procedures outlined in Wolff, in some respects they go beyond what the due process clause itself requires.") (internal citations omitted). Under 28 C.F.R. § 541.5, when BOP staff have reason to believe that an inmate committed a prohibited act, the BOP must prepare an incident report and refer the matter for investigation. After an investigation, the incident report is provided to a Unit Discipline Committee pursuant to 28 C.F.R. § 541.7, for an initial hearing. A DHO hearing must be conducted pursuant to the procedures set forth at 28 C.F.R. § 541.8. The procedures require the BOP to give inmates advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.8(c). Inmates are entitled to the assistance of a staff representative for the DHO hearing. 28 C.F.R. § 541.8(d). The inmate has the right to be present throughout the DHO hearing, except during deliberation or when institutional security would be jeopardized. 28 C.F.R. § 541.8(e).

In a DHO hearing, the inmate is entitled to make a statement, present documentary evidence, and submit names of requested witnesses and have them called to testify, if reasonably available. 28 C.F.R. § 541.8(f). Once a decision has been made by the DHO, the DHO must prepare a record of the proceedings. The record of proceedings must be sufficient to document that the inmate was advised of his rights, the DHO's findings, the specific evidence relied upon by the DHO, the sanctions imposed, the reasons for the DHO's decision and for the sanctions imposed, and the record must be delivered to the inmate. 28 C.F.R. § 541.8(h).

### C. Analysis

#### 1. Whether the DHO was biased

After conceding his claim that the DHO was just another corrections officer and acknowledging that the DHO was qualified and served as a full-time DHO, Petitioner suggested in his reply brief that it was not possible for a DHO to be partial when called upon to review the allegations made by his BOP colleagues. This claim falls short of establishing a due process violation. The Third Circuit has explained that "the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body[.]" *Greer v. Hogston,* 288 F. App'x 797, 799 (3d Cir. 2008) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir.1974)). Therefore, the Court turns to Petitioner's next claim.

#### 2. Whether a single member UDC Committee violates Petitioner's right to Due Process

Petitioner raised this claim for the first time in his reply brief, depriving Respondent of the opportunity to respond. Nonetheless, the claim is without merit. Petitioner's claim is based on the sole signature of one individual on UDC section of the incident report. (Clark Decl., Attach. 3, Docket No. 6-1 at 15, ¶ 21.) The due process protections described in *Wolff* do not provide a right to a three member UDC Committee. Therefore, Petitioner must rely on the BOP regulations. 28 C.F.R. § 541.7(b), provides that "[t]he UDC ordinarily consists of two or more staff. UDC members will not be victims, witnesses, investigators, or otherwise significantly

10

involved in the incident." The statement that a UDC ordinarily consists of two or more staff does not create a protected due process interest in having more than a single member UDC Committee in a BOP disciplinary proceeding. Therefore, this claim fails.

### 3. Whether some evidence supports the DHO's decision

Petitioner's claim that the DHO's decision is not supported by some evidence is complicated by the fact that, in his reply brief, Petitioner asserts that he was never provided access to the statements made by Officers Lebron-Ocasio and Officer J. Sandino, regarding their use of force to restrain Petitioner on the day of the incident. Petitioner contends that if he had been provided with these statements before the DHO hearing, he could have argued that these statements were inconsistent with the facts alleged by Officer Lebron-Ocasio in the incident report, which the DHO found credible and relied on in finding Petitioner guilty of possessing a cell phone.

In his memorandum to the Operation Lieutenant concerning the use of force on August 3, 2019, Officer Lebron-Ocasio wrote,

> On August 3, 2019 at approximately 6:58 pm I W. Lebron-Ocasio was conducting rounds in unit 5802. Upon arriving at the third floor an Inmate began to whistle in front of room 339. At his moment I decided to go in the room and conduct a shakedown. I/M Randolph Register #69594-066 is the first one I pat down after I am done he begins to leave the room and asks another Inmate for his book. When I asked I/M Randolph to let me see the book he started to run from me. I ran after Inmate Randolph to the second floor where he ran into bathroom #213. At this moment I/M Randolph was given a direct order to submit to hand restraints in which he would not comply. I/M Randolph tried to run from me again for a second time, at

> this moment I grabbed him from the waist giving him several direct orders to get on the floor and he would not comply with my direct orders. At this moment Officer J. Sandino from 5803 arrived to assist me with I/M Randolph. At his moment we were able to apply hand restraints to Inmate Randolph. I/M Randolph was still not complying and tried to run from us again, even with his hand restraints. At this moment we were able to get I/M Randolph into quiet room #250 and give him several direct orders to get on the floor in which he did not comply with us. I/M Randolph was still trying to get away from us so we used the necessary amount of force to hold him against the windows till more staff arrived on the scene. Upon searching the urinal in bathroom #213 where the Inmate tried to hide the contraband, a Black LG phone was found.

(Clark Decl., Attach. 6, Docket No. 6-1 at 32.)

Officer J. Sandino's report to the West Operations Lieutenant states,

> On August 3, 2019 at approximately 6:58 P.M., I, Officer J. Sandino, was assigned as the 5803 Housing Unit Officer. While conducting a rounds on the 1st floor, I heard over the radio that the 5802 unit officer W. Lebron was needing assistance on the second floor of his unit. I immediately ran across the yard to the 5802 unit building and to the 2nd floor where I found Officer W. Lebron attempting to restrain inmate JEROME RANDOLPH #69594-066 who was being non-compliant and resisting being restrained in front of the 2nd floor quite [sic] room #250 next to the closed off staircase. I immediately assisted by restraining the inmate Randolph while officer W. Lebron placed hand restraints on the inmate Randolph since the inmate Randolph kept attempting to break free from our custody. Officer W. Lebron and myself escorted inmate Randolph to the #250 quiet room and gave inmate Randolph multiple commands to stop resisting and comply. Inmate Randolph did not comply with our commands and continued to resist. Officer W. Lebron and I attempted to restrain Inmate Randolph to the floor but inmate Randolph resisted and was instead pinned up against the window. I Officer J. Sandino took control of inmate Randolph as he was held up against the

> window while Office W. Lebron went to clear the hallway and search for the contraband that inmate Randolph threw away. Ops Lt arrived on the scene along with two compound officers. Inmate Randolph claimed that he was running because he had stamps on him but Officer W. Lebron returned to the quiet room with a cell phone that inmate Randolph had hidden in a book that he threw in bathroom #213. I assisted the two compound officers escort inmate Randolph down the closed staircase due to inmate Randolph continuing to be non-complaint and resisting being restrained. I Officer J. Sandino did not sustain any injuries during this use of force.

(Docket No. 6-1 at 31.)

The photo sheet of the black LG cell phone provided to the DHO was taken by Lieutenant W. Decker, who wrote,

> [o]n August 3, 2019 at approximately 6:58 pm, Officer Lebron conducted a room search inside unit 5802 room 339. Upon pat searching inmate Randolph Reg. No. 695-594-066, he attempted to have a book passed to him without the item being search [sic]. As the Officer requested the book be handed to him, inmate Randolph grabbed the book and attempted to flee. After a brief pursuit, inmate Randolph threw the book into bathroom 213. Upon searching the bathroom a black in color LG cell phone was recovered from the area that inmate Randolph threw the items.

(Docket No. 6-1 at 27.)

According to the DHO Hearing Report, Section V, Specific Evidence Relied on To Support Findings, the DHO based his finding specifically on Officer Lebron-Ocasio's description of the incident in the incident report. The DHO did not discuss the fact that the incident report differed somewhat from the description of the incident in the use of force reports. The incident report implied Petitioner was restrained in the

13

bathroom when the cell phone was found there. (Clark Decl., Attach. 6, §, Docket No. 6-1 at 23.) The DHO further stated "in addition the DHO considered the Photograph depicting the black LG cell phone found in your possession, on August 3, 2019, at approximately 6:58 p.m., inside of restroom (213), in the FCI Fort Dix 5802 inmate housing unit, during a search by the reporting staff member." (Clark Decl., Attach. 6, §, Docket No. 6-1 at 23.) This statement implies that the DHO believed the cell phone was found in the restroom at the same time Petitioner was in the restroom. The DHO did not cite to any additional evidence, but he explained "there was no information which would make the DHO believe that the phone belonged to someone other than the lone occupant in the restroom." (*Id.*) The DHO's decision may have been different if the phone was found in an empty bathroom, as suggested by the conflicting statements.

According to the BOP regulations, "[t]he DHO will consider all evidence presented during the hearing. The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." 28 C.F.R. § 541.8  The photo sheet and the statements of Officer J. Sandino and Officer Lebron-Ocasio appear to have been attached to the DHO Report, which suggests they were part of the evidence at the DHO hearing, but they were not addressed by the DHO. Furthermore, the Third Circuit has recognized that "an inmate facing disciplinary charges must have an opportunity to marshal the facts and prepare a defense." *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) (quoting *Giano v. Sullivan*, 709 F. Supp. 1209, 1214 (S.D.N.Y. 1989) (citing *Wolff*, 418 U.S. at 564) (additional citation

omitted). A prisoner's opportunity to present evidence at a disciplinary hearing is "limited by the demands of prisoner safety and institutional order," *id.* at 1400, but it is not known whether these statements were withheld from Petitioner until after the DHO hearing based on an institutional safety concern.

Although courts do not typically permit new claims to be raised in a reply brief, this Court will permit Petitioner to amend his claim, through his reply brief. Respondent will be provided the opportunity to address the issues raised by Petitioner's new claim, as discussed in this Opinion, and Respondent should address whether an evidentiary hearing is necessary. Petitioner may file a supplemental reply brief. Therefore, the Court reserves this claim for supplemental briefing.

### III.   CONCLUSION

For the reasons discussed above, the Court denies in part the petition for writ of habeas corpus and will order supplemental briefing on the remaining claim.

An appropriate Order follows.


Date: **October 3, 2022**

>   s/Renée Marie Bumb
>   **RENÉE MARIE BUMB**
>   **United States District Judge**