NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| JEROME RANDOLPH, | : | CIV. NO. 20-4356 (RMB) |
| Petitioner | : | |
| v. | : | OPINION |
| WARDEN FCI FORT DIX, | : | |
| Respondent | : | |

**RENÉE MARIE BUMB, UNITED STATES DISTRICT JUDGE**

This matter comes before the Court upon Petitioner Jerome Randolph's petition for writ of habeas corpus under 28 U.S.C. § 2241 (Pet., Docket No. 1), alleging due process violations in connection with a prison disciplinary hearing in the Federal Bureau of Prisons ("BOP"), FCI Fort Dix. By Opinion and Order dated October 3, 2022, this Court denied two of Petitioner's due process claims and ordered supplemental briefing on his third claim. (Opinion and Order, Docket Nos. 11, 12.) Respondent submitted a supplemental brief, and Petitioner submitted a supplemental reply brief. For the reasons discussed below, the Court will grant Petitioner a new disciplinary hearing.

**I.     BACKGROUND**

The background is repeated verbatim from this Court's October 3, 2022 Opinion. (Docket No. 11.)

A. **The Incident Report**

Petitioner, presently incarcerated at the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"), was incarcerated in FCI Fort Dix at the time of the incident in question. (Declaration of Christina Clark[1] ("Clark Decl."), Attach. 1, Docket No. 6-1 at 5-7.) Officer W. Lebron-Ocasio described the alleged prison rule infraction in Incident Report #3287297 as follows:

> On August 3, 2019 at approximately 6:58 pm I W. Lebron-Ocasio was conducting a shakedown in room 339. I/M Randolph Register No. 69594-066 is the first one I pat down. After I am done he begins to leave the room and asks another Inmate for his book. When I ask I/M Randolph to let me see the book he started to run from me. I ran after Inmate Randolph to the second floor where he ran into the urinal area in bathroom #213. At this moment I/M Randolph was given several direct orders to submit to hand restraints in which he would not comply. Upon responding staff arrival, a search was conducted in the urinal area in bathroom #213 where the Inmate was located. One black LG phone was found in the urinal area.

(Clark Decl., Attach. 6, ¶ 11, Docket No. 6-1 at 15.)

In the incident report, Petitioner was charged with three violations of the disciplinary code: 108 ("Possession, manufacture, introduction, or loss of a hazardous tool"), 115 ("Destroying and/or disposing of any item during a search or attempt to search"), and 307 ("Refusing to obey an order of any staff member"). (*Id.* ¶ 10.) *See* 28 C.F.R. § 541.3 (listing code violations in table). Codes 108 and 115 are

---

[1] Christina Clark is an attorney with the BOP, FCI-Fort Dix, and has access to BOP files maintained in the ordinary course of business. (Clark Decl. ¶1, Docket No. 6-1.)

2

"greatest severity level prohibited acts," and Code 307 is a "moderate severity level prohibited act." *Id.*

Petitioner received a copy of Officer Lebron-Ocasio's incident report. (Clark Decl., Attach 3, Part I, ¶ 14, Docket No. 6-1 at 15.) The investigation of the incident was conducted the next morning by Lt. A. Gillespie, who notified Petitioner of his rights. (Clark Decl., Attach 3, Part III, ¶ 23, Docket No. 6-1 at 15.) Petitioner told Lt. Gillespie that he was in the quiet room, not the bathroom, when he was handcuffed. (*Id.* ¶ 24.) Petitioner also said he was not the person who ran from the officer because he was wearing flip flops, and he cannot run in flip flops. (*Id.*)

**B.   UDC Review**

On August 5, 2019, the Unit Discipline Committee ("UDC") reviewed the incident report and investigation. (*Id.*, Part II.) Petitioner told the UDC that "he did not run from the officer" and "never made it to the restroom." (*Id.* ¶ 17.) The UDC referred the matter to the DHO because of the seriousness of the infraction. (*Id.* ¶¶18, 19.) Petitioner acknowledged that he was provided with: (1) a written notice that the matter would go before a DHO; and (2) a written notice of his rights at a DHO hearing. (Clark Decl., Attach. 4 & 5, Docket Nos. 6-1 at 17-20.)

**C.   DHO Hearing**

On August 15, 2019, DHO Keith Hampton conducted Petitioner's disciplinary hearing. (*Id.*, Attach 6, Docket No. 6-1 at 22-25.) Hampton is a permanent, full-time DHO. (Declaration of Keith Hampton, ¶ 3, Docket No. 6-2.) According to the DHO

Hearing Report, Hampton considered only the code 108 charge. (Clark Decl. Attach. 6, Docket No. 6-1 at 22 (summary of charges)). Code 108 is defined as follows:

> Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device).

28 C.F.R. § 541.3.

At the hearing, Petitioner did not call any witnesses or offer any evidence apart from his statement that "I am not guilty, the cellphone wasn't mine." (Clark Decl., Attach. 6, Part III(b), Docket No. 6-1 at 22.) The DHO considered this statement along with the incident report from Officer Lebron-Ocasio, and the photo of the cellphone that was discovered. (*Id.*, Attach 6, § V, Docket No. 6-1 at 23.) Also in record, but not discussed in the DHO Report, were two memoranda, one from Officer Lebron-Ocasio and the other from Officer J. Sandino, regarding the use-of-force in restraining Petitioner in connection with the incident. (*Id.*, Attach. 6, Docket No. 6-1 at 31, 32.)

    D.    **The DHO Decision**

The DHO found that Petitioner violated code 108 as charged. (*Id.*, § IV, Docket No. 6-1 at 23.) He did not believe Petitioner's denials of guilt were truthful. (*Id.*, § V.) Instead, the DHO credited the incident report by Officer Lebron-Ocasio.

4

(*Id.*) The DHO noted that "possession" under 108 means to "have on one's person or under one's dominion or control." (*Id.*) The DHO concluded that it was not relevant whether the cellphone (1) "belonged" to Petitioner; or (2) was found on his person by BOP staff, because the evidence tended to show that he had dominion over it prior to his apprehension in bathroom 213. (Clark Decl., Attach. 6, § V, Docket No. 6-1 at 23.) Based on his findings, DHO Hampton imposed sanctions of disallowance of 41 days good conduct time, 60 days disciplinary segregation (suspended 180 days with clear conduct), and 365 days loss of visitor privileges. (*Id.*, § VI, Docket No. 6-1 at 24.) The DHO report was completed on August 20, 2019 and delivered to Petitioner on September 5, 2019. (*Id.*, § IX, Docket No. 6-1 at 24.) The DHO report advised Petitioner of his right to appeal the DHO's decision. (*Id.* § VIII.) It is undisputed that Petitioner exhausted his administrative remedies. (Answer, Docket No. 6 at 10.)

II. DISCUSSION

    A.    Whether the DHO Failed to Consider All Evidence

Petitioner asserted the following claim in his reply brief, and this Court reserved the claim for supplemental briefing. Petitioner was not provided with conflicting reports of the incident, which he could have used at the disciplinary hearing to exonerate himself. Lieutenant W. Decker gave a statement that Petitioner threw a book into bathroom #213. (Reply Brief, Docket No. 7 at 3, citing Respondent's Exhibit 6.) Petitioner notes that no book was recovered. (*Id.*) Officer J. Sandino stated that Petitioner was resisting restraint in front of the second floor room

#250, which Petitioner asserts is at the opposite end of the building to bathroom #213. (Reply Brief, Docket No. 7 at 3.) Further, Officer Lebron-Ocasio gave a statement, in addition to the incident report, which says nothing about a book, only that a cell phone was found upon search of a urinal in bathroom #213. (*Id.* at 4.) In ordering supplemental briefing, this Court stated:

> the DHO based his finding specifically on Officer Lebron-Ocasio's description of the incident in the incident report. The DHO did not discuss the fact that the incident report differed somewhat from the description of the incident in the use of force reports. The incident report implied Petitioner was restrained in the bathroom when the cell phone was found there. (Clark Decl., Attach. 6, §, Docket No. 6-1 at 23.) The DHO further stated "in addition the DHO considered the Photograph depicting the black LG cell phone found in your possession, on August 3, 2019, at approximately 6:58 p.m., inside of restroom (213), in the FCI Fort Dix 5802 inmate housing unit, during a search by the reporting staff member." (Clark Decl., Attach. 6, §, Docket No. 6-1 at 23.) This statement implies that the DHO believed the cell phone was found in the restroom at the same time Petitioner was in the restroom. The DHO did not cite to any additional evidence, but he explained "there was no information which would make the DHO believe that the phone belonged to someone other than the lone occupant in the restroom." (*Id.*) The DHO's decision may have been different if the phone was found in an empty bathroom, as suggested by the conflicting statements.
>
> According to the BOP regulations, "[t]he DHO will consider all evidence presented during the hearing. The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." 28 C.F.R. § 541.8  The photo sheet and the statements of Officer J. Sandino and Officer Lebron-Ocasio appear to have been attached to the DHO Report, which suggests they were part of the evidence at the DHO hearing, but they were not addressed by the DHO.

6

> Furthermore, the Third Circuit has recognized that "an inmate facing disciplinary charges must have an opportunity to marshal the facts and prepare a defense." *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) (quoting *Giano v. Sullivan*, 709 F. Supp. 1209, 1214 (S.D.N.Y. 1989) (citing *Wolff*, 418 U.S. at 564) (additional citation omitted). A prisoner's opportunity to present evidence at a disciplinary hearing is "limited by the demands of prisoner safety and institutional order," *id.* at 1400, but it is not known whether these statements were withheld from Petitioner until after the DHO hearing based on an institutional safety concern.

    **B.**    **Respondent's Supplemental Brief**

Respondent contends that Petitioner was not entitled to copies of the evidence in advance of the DHO hearing. Instead, Petitioner was entitled only to notice of the facts supporting the charge against him, which was satisfied by providing a copy of the incident report. (Resp't Supp. Brief, Docket No. 16 at 3.) Respondent contends there are no material inconsistencies between the incident report and the use of force reports. (*Id.* at 4.) Therefore, pursuant to 28 C.F.R. § 541.8(f), the DHO was not required to entertain duplicative or additional evidence where a witness's "testimony is adequately summarized in the incident report[.]"

Respondent explains that Officer Lebron-Ocasio is the officer who witnessed the event from start to finish and authored the incident report. (Respondent's Supp. Brief, Docket No. 16 at 5.) Officer Lebron-Ocasio reported that an inmate handed something to Petitioner during a search in a third floor room, and Petitioner then fled to the second floor bathroom #213 urinal area, where Officer Lebron-Ocasio confronted him, but Petitioner resisted and fled the bathroom. (*Id.*) When Officer

7

Lebron-Ocasio called for back-up, Officer Sandino arrived and they both attempted to subdue Petitioner, and he continued to resist until they restrained him outside the quiet room #250.  (Resp't Supp. Brief, Docket No. 16 at 6.)  Then, Officer Lebron-Ocasio returned to bathroom #213 and found the cell phone in the urinal area, not on Petitioner's person. (*Id.*)  Officer Sandino's report concerns only the events that occurred after Petitioner resisted Officer Lebron-Ocasio in the bathroom. (*Id.*) The DHO found Petitioner not credible, and relied solely on the incident report to find Petitioner guilty of possessing the cell phone.  (*Id.*)

     Respondent notes that Petitioner provided inconsistent statements regarding the incident. (*Id.*)  He told the investigator that he was in the quiet room when he was handcuffed. (*Id.*) He told the UDC Committee that he did not run from the officer, and he never made it to the bathroom.  (*Id.*) In his petition, he said that he was patted down in the bathroom, and when nothing was found, he walked out of the bathroom.  (*Id.* at 7-8.)  Finally, Respondent asserts that Petitioner has not shown how the use of force complaints exculpate him.  (*Id.* at 8.) Thus, Respondent maintains that the DHO properly relied on some evidence that Petitioner possessed the cell phone, including:  (1) Officer Lebron-Ocasio saw Petitioner take an object from an inmate and flee from the third floor to the second floor; (2) Officer Lebron-Ocasio confronted Petitioner in the urinal area of bathroom #213, but Petitioner continued to resist and elude; (3) once the officers finally subdued Petitioner, Officer Lebron-Ocasio searched the bathroom and found a cell phone.

8

### C. Petitioner's Supplemental Brief

In his supplemental brief, Petitioner asserts that the officers made two inconsistent statements. (Petr's Supp. Brief, Docket No. 17 at 1.) Officer Lebron-Ocasio said Petitioner was restrained in bathroom #213, where the cell phone was found. Officer Sandino said that he and Officer Lebron-Ocasio restrained Petitioner in the quiet room #250, and then Officer Lebron-Ocasio returned to bathroom #213 and found the cell phone. Thus, Petitioner concludes that the DHO, who was required to consider all of the evidence at the hearing, failed to address the conflicting statements in the evidence.

### D. Analysis

The incident report suggests that Petitioner was in the urinal area of the bathroom when the cell phone was found there. Apparently relying solely on the incident report, the DHO found Petitioner was not credible when he denied possessing the cell phone. The DHO found that the reporting officer had no reason to lie and "there was no information that would make the DHO believe that the phone belonged to someone other than the sole occupant" [of bathroom #213]. (Discipline Hearing Officer Report, Docket No. 6-1 at 23.) If, as Officer Sandino's report suggests, Petitioner was not the sole occupant of bathroom #213 at the time the cell phone was discovered, Petitioner should have had the opportunity to address whether other inmates had access to the bathroom. *See Solomon v. Warden, FCI Fairton*, 506 F. App'x 147, 149 (3d Cir. 2012) (citing *White v. Kane*, 860 F. Supp.

9

1075, 1079 n. 5 (E.D.Pa.1994), *aff'd*, 52 F.3d 319 (3d Cir. 1995) (The "some evidence" standard of an inmate's guilt of possession "in the absence of direct evidence" … "may be satisfied by application of the constructive possession doctrine in limited circumstances where a small number of inmates are potentially guilty of the offense charged.")  Further, although not addressed in the parties' supplemental briefs, also attached to the DHO's Discipline Hearing Report was a photo of the cell phone that was found.  The phot was taken by Lieutenant Decker, who wrote that Petitioner fled Room 339 after an inmate handed him a book that had not been searched, and Officer Lebron-Ocasio pursued him.  According to Lieutenant Decker, "[a]fter a brief pursuit, Inmate Randolph threw the book into bathroom 213."  This is another conflicting statement in the record before the DHO that was not addressed.

Pursuant to 28 C.F.R. § 541.8(f), the DHO was required to consider conflicting evidence and make a determination supported by the greater weight of the evidence. The DHO was not free to ignore conflicting evidence of which he was aware. Violation of the BOP's regulations are subject to harmless error review. *Ancrum v. Holt*, 506 F. App'x 95, 97 (3d Cir. 2012). On this record, however, the Court is unable to determine whether the error was harmless. Therefore, the Court will order the BOP to provide Petitioner with a new disciplinary hearing, where the DHO must consider the conflicting evidence and permit Petitioner to present a defense in light of the conflicting evidence.

10

## III. CONCLUSION

For the reasons discussed above, the habeas petition is granted in part, and the BOP shall conduct a new disciplinary hearing on Petitioner's incident report #3287297.

An appropriate Order follows.

**Date: January 3, 2023**

<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**United States District Judge**
